**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

------------------------------------------------------------------

ALICIA MIMS, on behalf of her
minor child, A.M.

               Plaintiff,            **Civ. No. 4:24-cv-218**

      v.

CHEER ATHLETICS—PLANO, INC.       **COMPLAINT**

            Defendant.

------------------------------------------------------------------

Plaintiff, ALICIA MIMS, on behalf of her minor child A.M., by and through undersigned counsel, EISENBERG & BAUM, LLP, hereby states her Complaint against Defendant, CHEER ATHLETICS—PLANO, INC. ("Cheer Athletics"):

## INTRODUCTION

1.     A.M. is a deaf minor individual who uses American Sign Language ("ASL"), which is her expressed, preferred, and most effective means to receive and learn information. A.M. is a competitive cheerleader with Defendant Cheer Athletics—Plano ("Defendant" or "Cheer Athletics"), one of the country's leading competitive cheerleading programs and training facilities.

2.     Plaintiff Alicia Mims ("Plaintiff" or "Ms. Mims"), A.M.'s mother, has made numerous requests for Defendant to provide qualified ASL interpreters at Defendant's practices and competitions that would allow A.M. to (1) effectively communicate with administrators, coaches, teammates, and medical staff and (2) meaningfully access, participate in, and enjoy Defendant's cheerleading program in the same manner as children without disabilities.

3.     While Defendant is currently undergoing a so-called "trial period" of providing qualified interpreters at Cheer Athletics practices beginning February 2024, Defendant still

categorically refuses to accommodate A.M.'s disability for competitions by providing qualified interpreters to meaningfully access, participate in, and enjoy Defendant's services in the same manner as children without disabilities.

4.      Additionally, the defendant has placed significant restrictions on the qualified sign language interpreters' ability to meaningfully communicate necessary information to Ari during practice. For example, while the athletes are performing a "skill" – a team-based, coordinated physical performance often involving challenging and potentially dangerous athletic maneuvers – coaches verbally give instructions and engage with the athletes, but Defendant prohibits the interpreters from translating this information into ASL. A.M. thereby misses learning opportunities and safety warnings otherwise available to her hearing teammates.

5.      Defendant, therefore, intentionally discriminated against A.M. on the basis of her disability, causing her severe emotional distress and denial of opportunity. Civil rights violations are inherently distressing because they inflict a "profound personal humiliation." *Powers v. Ohio*, 499 U.S. 400, 413 (1991). When a person like A.M. is excluded from an aspect of public life, that discrimination "denigrates the dignity of the excluded" and "reinvokes a history of exclusion." *J.E.B. v. Alabama*, 511 U.S. 127, 142 (1994). This is particularly true where a child's civil rights are at stake.

6.      Plaintiff therefore brings this action to compel Defendant to cease its unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for children who are deaf to participate in Defendant's cheerleading program and competitions.

7.      Plaintiff seeks declaratory and injunctive relief; nominal and compensatory damages; and attorneys' fees and costs to redress Defendant's unlawful and intentional

discrimination on the basis of A.M.'s disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181., *et seq*., and the Texas Human Resources Code ("THRC").

## PARTIES

8.      Plaintiff Alicia Mims is an individual residing in Prosper, Texas.

9.      A.M. is a deaf minor child residing in Prosper, Texas, who primarily uses ASL to learn and receive information. She is substantially limited in the major life activities of hearing and speaking within the meaning of federal anti-discrimination laws. Plaintiff Alicia Mims is A.M.'s mother and brings this action on her behalf.

10.     Upon information and belief, Defendant Cheer Athletics—Plano, Inc., is a Texas corporation with a registered address for service at c/o Joseph K. Melton, 1718 North 1st Street, Garland, TX 75040. Upon information and belief, Cheer Athletics is a place of public accommodation within the meaning of Title III of the ADA and a public facility within the meaning of the Texas Human Resources Code.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under the laws of the United States.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts and omissions that give rise to the claims occurred within this District and because Defendant resides in this District.

## CONDITION PRECEDENT FOR TEXAS HUMAN RESOURCES CODE CLAIM

13.     Pursuant to Tex. Hum. Res. Code § 121.0041(c), a claimant must give written

notice of its claims to a defendant "[n]ot later than the 60th day before the date an action to which this section applies is filed."

14.     On January 4, 2024, Plaintiff provided notice by email to Defendant, which included Plaintiff's name, a description of each alleged violation in reasonable detail, and the date, place, and manner in which Plaintiff discovered each alleged violation.

15.     On January 8, 2024, Defendant replied through their counsel via email. Sixty days later, by March 8, 2024, Defendants did not issue a response consistent with Tex. Hum. Res. Code § 121.0041(d) or Tex. Hum. Res. Code § 121.0041(e).

16.     As such, Plaintiff has timely complied with the requirements of Tex. Hum. Res. Code § 121.0041(c), *et seq.*, as a prerequisite to commencing this suit for violations of the THRC.

## STATEMENT OF FACTS

17.     A.M. is a deaf nine-year-old girl who primarily communicates in ASL. She loves cheerleading and was excited to join Cheer Athletics—Frisco, a less demanding introductory program, for the 2021-2022 season. Plaintiff then transferred A.M. to the more rigorous program at Defendant's facility, where she joined the Cheetah Cubs team for the 2022-2023 season. A.M. is now on the Bobcats team for the 2023-2024 season. A.M. attends Davis Elementary in Plano, TX, the regional day school for the deaf which provides qualified interpreters for the entire school day to facilitate A.M.'s learning, comprehension, and safety.

18.     Defendant "is the home of the world's largest, most state-of-the-art training facility for cheer and dance," where it claims to provide "a safe learning environment for athletes of all ages and abilities."[1]

19.     Plaintiff Alicia Mims began requesting qualified interpreters for A.M. on March 31,

---

[1] *See* Cheer Athletics—Plano webpage, https://cheerathletics.com/locations/plano/.

2023, after watching A.M. struggle to understand coaches throughout the 2022-2023 season. She

directed these requests to Angela Rogers, Jody Melton, and Brad Habermel, co-owners of Cheer

Athletics and Cheer Athletics—Plano. No party responded to this request for an interpreter.

20.     Despite Plaintiff's repeated requests for interpretation services, Defendant failed to

provide this accommodation for practices until after lawyers got involved at the start of 2024, and

then only for a limited "trial period" at practices only

21.     Prior to 2024, Defendant insisted A.M. use a Roger device – a remote microphone

system that connects directly to an individual's hearing aid or cochlear implant. Due to the nature

of A.M.'s severe to profound hearing loss, the Roger device did not provide for effective

communication and does not provide clear communication to A.M. through her cochlear implant.

22.     A.M. previously attempted to use the Roger device in school and found it

ineffective for her. When A.M. tried to use it at Defendant's practices on approximately three

occasions, she found it made understanding instructions even more challenging and distracting.

The Roger does not help A.M hear clearly in a cheer setting but only increases the volume of

distracting background noise. Further, coaches at Defendant's facility did not properly or

consistently use the device, failing to speak into it or turn it on when necessary. The Roger device

does not provide effective communication as a qualified American Sign Language interpreter

would provide effective communication.

23.     American Sign Language (ASL) is a rich, visual language that allows for nuanced

communication through hand gestures, facial expressions, and body language. For a profoundly

deaf individual, ASL is not just a method of communication but a primary language that enables

them to receive and interpret information effectively. In the context of cheerleading, where precise

instructions, timing, and feedback are crucial, an ASL interpreter can translate spoken words into

a visual form that the child can understand immediately and clearly, no matter how loud the gym or music is. This direct form of communication is essential for learning routines, understanding coach feedback, and interacting with teammates. Unlike an amplified device, which relies on enhancing sound for someone who may not benefit from auditory cues, an ASL interpreter ensures that communication is accessible, immediate, and fully comprehensible.

24.     Cheerleading is inherently visual and performance-based, involving routines that require synchronization, spatial awareness, and visual coordination among team members. An ASL interpreter can integrate seamlessly into this visual environment, using sign language to convey instructions, counts, and feedback in a way that aligns with the visual cues the sport demands. For a profoundly deaf child, visual learning is often more developed and crucial for their understanding and interaction with the world. An ASL interpreter, by providing visual signals, can enhance the child's ability to participate fully in practices and performances. This method of communication complements the visual aspects of cheerleading, making it easier for the child to follow along with routines, learn choreography, and respond to visual cues from coaches and teammates.

25.     Cheerleading environments are typically loud, filled with music, cheers from the crowd, and instructions from coaches. In such settings, an amplified device may struggle to be effective due to the overwhelming background noise. The device's purpose is to amplify sound, but in a context where distinguishing between relevant instructions and background noise is challenging, its usefulness can be limited. Profound deafness also means that even amplified sounds may not be perceived clearly or at all, making such devices less practical.

26.     An ASL interpreter, on the other hand, is unaffected by the noise level. They can provide clear, visual communication directly to the child, ensuring that instructions, counts, and

feedback are understood without interference from background noise. This consistent and clear communication is critical during competitions and practices, where the ability to receive information quickly and accurately can impact performance and coordination with the team. An interpreter's presence ensures that the child remains fully integrated into the team's activities, without the communication barriers that noise can introduce for those relying on amplified devices.

27.     A lack of effective communication hinders a deaf individual's ability to participate equally, engage with their peers, and preserve their emotional and social well-being.

28.     Due to Defendant's lack of action and delay for many months, Plaintiff sought legal counsel and sent an e-mailrequesting prompt action on January 4, 2024.

29.     On January 8, 2024, Defendant informed Plaintiff of its intent to conduct a "trial period" of interpreters during practices. In this communication, Defendant maintained its intent to not provide interpreters for competitions.

30.     Despite communicating this intent in early January 2024, Defendant did not provide an interpreter for A.M.'s practices until February 13, 2024.

31.     On Monday, February 12, 2024, one of Defendant's coaches moved A.M. from her existing spots in routines to less desirable and less necessary ones, allegedly due to a lack of straightness in her arms while performing – despite other young children on the team also routinely having bent arms during performances. The choice to move A.M. also stems from an alleged safety concern over the use of interpreters and the distraction they may pose to the athletes.

32.     Defendant failed to contact interpreter agencies until late January or early February 2024, at which time it ultimately signed a contract with American Sign Language Interpreting Services ("ASLIS"). It then took another week for ASLIS interpreters to obtain the necessary background checks and security clearances for them to attend Defendant's practices.

33.     Despite ultimately securing an interpreter for this "trial period," Defendant placed significant restrictions on the qualified interpreter's ability to meaningfully communicate necessary information to Ari at practices:

    a.   While the athletes are performing a "skill" – a team-based, coordinated physical performance often involving challenging and potentially dangerous athletic maneuvers – coaches may give instructions and engage with the athletes, but Defendant prohibits the interpreters from translating this information into ASL. A.M. thereby misses learning opportunities and safety warnings otherwise available to her hearing teammates.

    b.   The interpreter may not enter the performance surface during the execution of a routine.

    c.   The interpreter may only enter the performance surface with the permission of the coaches.

    d.   The interpreter may not sign during active skills or routines. They may provide a count of the music at times, but not always.

34.     Since beginning to provide interpretation services through ASLIS, Defendant has failed to appropriately communicate practice schedule changes to ASLIS to ensure consistent, effective communication for A.M.

35.     On February 26, 2024, Defendants did not inform the scheduled interpreter that the practice time changed from 5:30 PM to 5 PM, causing the interpreter to arrive late and resulting in a delay in A.M.'s access to effective communication. Defendant's coaches communicated changes in the practice schedule, of which Defendant was fully aware, to parents and participants at least a week in advance.

36.     Plaintiff was forced to contact ASLIS of her own accord to inform them of additional changes to the practice schedule on February 28, 2024. ASLIS was unable to accommodate the last-minute schedule change, and A.M. was once again deprived of effective communication for the first thirty minutes of the February 28, 2024, practice due to Defendant's failure to properly communicate the schedule to ASLIS.

37.     Additionally, Defendants entirely failed to schedule interpretation services for the February 22, 2024, practice. Defendant failed to include that practice date when providing dates to ASLIS for scheduling.

38.     Defendant did not provide an interpreter for the National Cheer Association All-Star National Championship which took place March 1 and 2, 2024, in Dallas, TX. Although ineffective, Defendant also did not use the Roger device or offer it to A.M., although they previously stated they would use the Roger device at competitions. A.M. was denied any form of communication access for the entirety of the competition.

39.     A.M. feels embarrassed and frustrated by her lack of understanding at practices and competitions. Without effective communication, she is excluded from opportunities to connect with her teammates and be fully included in Defendant's programs and services.

40.     Defendant continues to assert that it will not provide interpretation services for competitions.

41.     Defendant has not committed to providing interpretation services beyond the undefined "trial period."

## CAUSES OF ACTION

**CLAIM I:     Violations of Title III of the Americans with Disabilities Act**

42.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

43.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, *et seq*., has been in full force and effect and has applied to Defendant's conduct.

44.     Defendant owns, leases, and/or operates a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(D).

45.     At all times relevant to this action, A.M. has been substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of Title III of the ADA, 42 U.S.C. § 12102(2).

46.     Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

47.     Title III of the ADA provides that "[i]t shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

48.     Title III of the ADA also provides that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

49.     Title III of the ADA defines discrimination to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford

such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

50.     Title III of the ADA also defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

51.     Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1).

52.     Further, the ADA prohibits retaliation against individuals who oppose discrimination and assert their rights under the Act. 42 U.S.C. § 12203(a).

53.     Defendant retaliated against A.M. and Plaintiff's advocacy by removing A.M. from her positions on the team's routines and placing her in redundant and/or less desirable positions. Defendant maintains this change was based on a lack of straightness in A.M.'s arms, despite other children having similarly bent arms, and an unspecified, alleged safety risk posed by the presence of interpreters.

54.     Defendant discriminated against A.M. on the basis of her disability in violation of Title III of the ADA and its implementing regulations, as set forth above.

55.     Absent injunctive relief, there is a clear risk that Defendant's conduct will recur and harm A.M. and/or additional deaf persons.

56.     Plaintiff is therefore entitled to injunctive relief, attorneys' fees, costs, and disbursements to redress Defendant's unlawful discrimination against A.M. pursuant to Title III of the ADA, 42 U.S.C. § 12188(a)(1).

### CLAIM II: Violations of Chapter 121 of the Texas Human Resources Code

57.     Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

58.     At all times relevant to this action, the THRC has been in full force and effect and has applied to Defendant's conduct.

59.     Chapter 121 of the THRC states that "[t]he policy of the state is to encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code § 121.001.

60.     Defendants fall within the meaning of "public facilities" under Tex. Hum. Res. Code § 121.002(5), as Defendants are "a retail business, commercial establishment, or office building to which the general public is invited," and because it is a "place of public accommodation . . . to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited."

61.     Chapter 121 of the THRC states that "[p]ersons with disabilities have the same rights as persons without disabilities to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code § 121.003(a).

62.     "The discrimination prohibited by this section includes . . . a failure to . . . make reasonable accommodations in policies, practices, and procedures; or [] provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility." Tex. Hum. Res. Code

§ 121.003(d)(2)–(3). Defendant violated this provision by failing to provide qualified ASL interpreters to A.M. during practices and/or competitions.

63.     Defendant knew that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

64.     By violating Section 121.003, Cheer Athletics would be "deemed to have deprived a person with a disability of her or her civil liberties," and "there is a conclusive presumption of damages in the amount of at least $300 to the person with a disability." Tex. Hum. Res. Code § 121.004(b)(1).

65.     Plaintiff is entitled to compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and intentional discrimination.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

A.     Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant has subjected A.M. to unlawful discrimination in violation of Title III of the Americans with Disabilities Act and the Texas Human Resources Code.

B.     Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of Defendant's facilities, services, or programs;

C.     Order Defendant:

     i.  to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against A.M. or other deaf or hard of hearing individuals by failing to provide auxiliary aids necessary for meaningful access and full and equal enjoyment;

    ii.  to develop, implement, promulgate, and comply with policies to ensure that Defendant will consider the communication needs of deaf individuals who participate in Defendant's programs and services, and will affirmatively work with deaf individuals to provide effective auxiliary aids and services, including interpreters, to make their programs and services, including practices, meetings, and games, accessible;

   iii.  to implement these policies and procedures to all programs and services that are provided by Defendant; and

    iv.  to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA

D. Award to Plaintiff:

     i.  Nominal damages;

    ii.  Compensatory damages;

   iii.  Reasonable costs and attorneys' fees;

    iv.  Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

    v.  Any and all other relief that this Court finds necessary and appropriate.

Dated: March 11, 2024                    Respectfully submitted,


Andrew Rozynski, Esq.
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
Tel: (212) 353-8700
Fax: (917) 591-2875
arozynski@eandblaw.com
*Attorneys for Plaintiff*